238 So.2d 264 (1970)
Walter A. SOUTHER, Plaintiff-Appellee,
v.
Louis A. Blackcat DOMINGUE et al., Defendants-Appellants.
No. 3158.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
Rehearing Denied August 26, 1970.
Writ Refused October 7, 1970.
*265 Babineaux & Huval, by Jack Huval, Lafayette, for defendants-appellants.
William E. Logan, Jr., Lafayette, for plaintiff-appellee.
Before FRUGÉ, SAVOY, and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a possessory action. La.C.C.P. arts. 3655-3664. Defendants appeal from an adverse judgment on the merits.
Walter A. Souther, plaintiff herein, acquired a tract of land by notarial act of sale in 1953. As shown by the plat paraphed for identification with that sale (though not filed until eleven years later), that tract was bounded on the north, west, and south by the property of defendants, the Prejeans, and on the east by the Vermilion River, and included the property over which this controversy has arisen. The eastern and western portions of the tract are highland; the center is swamp. Plaintiff has bridged the Vermilion to make the eastern end of the property accessible, has cleared and built a barn upon that eastern end, fenced it, and grazed cattle and grown crops there. The western end of the property, however, was practically inaccessible to Souther because of the swamp, and he at no time prior to the institution of this suit attempted to make any actual use of that portion of the property. The area in dispute is approximately 9.7 acres in the southwest corner of this tract.
Louis Charles Prejean, Oran Vincent Prejean, and Lucille Ann Prejean, who with their tenant Louis A. Domingue are made defendants, acquired the property surrounding that claimed by Souther (including, they allege, the property in dispute) from the succession of Dr. Louis A. Prejean. The Prejeans and their tenants, who live nearby, have for at least thirty years used the disputed property as a pasture for their cattle. Prior to December 4, 1961, no fences were erected by the Prejeans or their tenants to the east of the disputed tract or to its north, where it admittedly abuts land owned by Souther, because the heavy woods to the north and the heavy woods and swamp to the east served as a natural barrier to cattle. It does not appear that fences were erected to the south and west, but land admittedly belonging to the Prejeans abuts the disputed area on those sides. The north and east boundary claimed by plaintiff was clearly marked, however. Markers which several tenants of the Prejeans testified represented the boundary between the Prejeans and Souther for at least thirty years were located by a 1953 survey in precisely the locations shown by a 1921 plat showing the property lines in the area. These markers were still visible in 1961. Only cattle belonging to the Prejeans or to their tenants grazed on the land in dispute. The tenants regularly cleared the pasture of underbrush to allow their cattle to graze.
For about two years prior to the activities out of which this dispute arises, no cattle were maintained by the Prejeans or their tenants on the property. Then, the Prejeans leased to defendant Domingue, who again had the area cleared, this time by using a bulldozer. On October 17, 1961, one year and one month before this action was filed, Mr. C. J. Langlinais, a surveyor hired by Souther to reestablish his northern boundary against some timber operations off his property, noticed that the disputed 9.7 acres were "being cleared off by a bulldozer. There was no trees, hardly any trees standing there." Tr. 32. Souther knew prior to November 23, 1961, when he admits he first became aware that there was a question as to the disputed area, that a bulldozer had cleared the land. On the last mentioned date, Souther joined *266 Prejean on the property to discuss boundaries, and learned that there was a difference of opinion, and that defendants claimed to possess the area in dispute, and intended to resume grazing cattle on it. Souther stated that he believed he owned the property, and when on December 4, 1961, Domingue erected a fence around the disputed property, Souther claims in his petition filed November 27, 1962, that the defendants thereby took possession of his property.
The Prejeans appealed suspensively from the trial court's judgment ordering them to restore to Souther possession of the disputed area. They contend that Souther has failed to prove that he ever possessed the land, La.C.C.P. art. 3660; La.C.C. arts. 3426-3456, and therefore was not entitled to bring the action, La.C.C.P. art. 3658. Alternatively, they contend that Souther's possessory action has prescribed because it was not brought within one year of the disturbance, citing La.C.C.P. art. 3658. We believe that both of these contentions are well founded.
Souther relies on the principle of law that where a contiguous body of land is conveyed by a single deed, possession exercised on any part of that tract (in this case, the eastern portion) extends constructively to the limits of the land as called for in the deed itself. La.C.C. arts. 3437, 3498; Lewis v. Standard Oil Co., 154 La. 1048, 98 So. 662 (1923).
The Prejeans, however, have proved actual corporeal possession of the disputed area followed by civil possession. Souther has done nothing, other than bringing this action, to interfere with their possession. Our jurisprudence has established that the maintenance of cattle or a pasture on an enclosed tract of land constitutes corporeal possession. Kilchrist v. Conrad, 191 So.2d 705 (La.App.3d Cir. 1966). "Enclosed" does not necessarily mean fenced in, but requires "that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." Hill v. Richey, 221 La. 402, 59 So.2d 434, 440 (1952). We believe that the boundaries of the area possessed by the Prejeans were sufficiently marked, both naturally, by the heavy wood lines and the swamp, and artificially, by the stakes and tree blazes, to be considered "enclosed".
The Prejeans had physically and corporeally possessed the land in dispute. Their possession was neither abandoned, Culpepper v. Weaver Bros. Lbr. Corp., 194 La. 897, 195 So. 349 (1940), nor physically usurped by another. Souther's mere constructive possession was therefore insufficient to oust their corporeal possession, or at least uninterrupted civil possession commencing with actual possession. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952); Kilchrist v. Conrad, 191 So.2d 705 (La. App.3d Cir. 1966); Robertson v. Morgan, 116 So.2d 141 (La.App. 1st Cir. 1959); Case v. Jeanerette Lbr. & Shingle Co., 79 So.2d 650 (La.App. 1st Cir. 1955).
But even assuming that Souther had possession of the land in dispute, his right to bring the possessory action has prescribed. La.C.C.P. art. 3658. We believe that Domingue's clearing of the tract in dispute by bulldozer, of which Souther learned through his agent, the surveyor, on October 17, 1961, and which he admittedly knew prior to November 23, 1961, was sufficient disturbance, particularly when accompanied by Prejean's express claim of possession on November 23, to "`bring home' to the `actual possessor', the realization that his dominion is being seriously challenged". Pittman v. Bourg, 179 La. 66, 153 So. 22, 24 (1934). Yet his petition was not filed until November 27, 1962. By that date, the one-year prescriptive period on *267 his right to bring the necessary action had elapsed.
For the foregoing reasons, the judgment appealed from is reversed, and plaintiff-appellee's suit is dismissed at his cost. All costs of this appeal are assessed against the plaintiff-appellee.
Reversed.